16-1248 Edward R. Stolz, II DBA Voice International Broadcasting Company for the Appellate Federal Communications Commission Mr. Kelly for the Appellate Mr. Shearer for the Appellate May it please the Court, my name is Dennis Kelly and I represent Edward R. Stolz, II doing business as Voice International Broadcasting Company The FCC Form 314, Assignment of License Application which is issued here was filed without the participation and approval of Mr. Stolz and during the course of time, after a number of years, after the FCC had sat on this case for almost 10 years this Court issued its decision on October 25, 2005 I'm sorry, let me take that back The pleading cycle in the application for review before the Commission and Bank ended on October 19, 2005. Six days later, this Court issued its opinion in KID v. FCC which we rely on in seeking a reversal and a vacation of the orders below and then the Commission sat on this case for almost 10 years before issuing decisions It's our position that this constituted arbitrary and capricious agency action in violation of 5 U.S.C. 706-2 What is it in KID that is so helpful to you? Well, what's helpful, Your Honor, is that in KID, if I could have just a moment to explain the background There was owner financing and a sale of a broadcast station and Mr. KID defaulted on his obligations The note holder went to a state court in California and got court orders where they were able to get the appointment of a receiver An application was filed at the FCC without the participation or consent of Mr. KID and the Commission granted the application and then they granted another application for the assignment of the license from the receiver to, I want to say it was the note holder Mr. KID came before this court and argued that what happened was that the Commission had honored or the state courts had enforced a reversionary interest and because of the FCC rule section 73.1150 barring reversionary interests in the sense that you can't lien or hypothecate a broadcast license this court reversed and remanded and the FCC in response dismissed the Form 314 and 316 applications and nominally restored the license to Mr. KID although he actually never put the station back on the air again and a settlement was reached in the case One of the things in the court's decision the case was remanded for the FCC to further explain its procedures in this area and because of the settlement the Commission never, so far as I know had never explained their rationale for what they did In our case there was a court order there was litigation between my client and Enercom Communications a large publicly traded corporation my client lost the litigation and a court order was entered in Sacramento County, California State Court to order Mr. Stolls to participate in the filing of an FCC Form 314 assignment application to transfer or assign the license of the FM station at issue from him to Enercom My client did not participate he didn't consent, didn't participate and the application was filed Enercom entered his name in the application and filed it Mr. Stolls engaged counsel I was not representing him at the time engaged other counsel to file a petition to deny and then there was a pleading cycle that went on Our position is that the judgment was a security interest Once you get a judgment, the creditor has a security interest and the judge in Sacramento County It seems to be far broader than anything that happened at Kidd As I see it, the court didn't at all question the basic notion that for the ownership issues, ownership of the station one relied on the state court litigation and if the party didn't like the outcome of that the party sought review in the state court system and it limited what a state court should do as to essentially directing an application to be made to the FCC to the license application, which is what happened here I really think the same I was familiar with the KTHO case when it was happening because I knew Mr. Kidd To me, when this case came to me in 2015 and putting together the timeline the Kidd case really shouted out loud at me as you had a California state judge ordering an individual to do something in the federal system and he bundled the license and the assets He could well have ordered, and he did order the sale of the station assets, the transmitter intangible assets, things like this, studio equipment  and that's our position in this case, Your Honor Did this court order the sale of the license or just order the submission of paperwork applying for a transfer to the FCC and then left it to the FCC to make its usual decision under federal law whether to grant it? As I understand what happened you reversed the commission and ordered them to explain their rationale and the commission really took no further action other than the parties settled after that I'm asking about this case All the state court did My understanding, correct me if I'm wrong is that the state court said when you win your contract claim file a transfer application with the FCC and let them decide if they think that transfer should go forward under federal law That's what happened in Kidd The commission could have recognized that there was a reversionary interest and then not granted the applications I have to admit, Kidd was a new person because it had always been the way in the communications bar we did things If there was a default on a note in the financing of a radio station we'd go get the station put into receivership and get a court order and then bring it to the commission and file an application This type of ruling I don't think ever came up until it was raised by Mr. Kidd It appears to me taking it to its logical progression a state court judge can't issue an order forcing an applicant such as Mr. Stolls to participate in filing of an FCC Form 314 application That to me is against the logical progression in Kidd and that's why we brought this appeal You had raised in your brief something about the separate position on the KDND license Let me answer my question My understanding is that as a result of that Intercom has given up that license That is correct Does that mean that Intercom only owns 4 FM licenses now and this case is moot? I submitted this morning through the electronic system the commission's order for Friday the 8th of September My client has 30 days to appeal that but it appears from a fair reading of that order that the commission is not going to look at the death of Jennifer Lee Strange in the context of other Intercom licenses in Sacramento What does that mean? Do they own more than 4 FM licenses now in this market? I think that's correct and they own an AM station Whichever rule is applied even under your view, which is that the 2002 order should apply, they now satisfy it Yeah, it would make it moot, Your Honor  Do you want to save some time for rebuttal? Good morning, may it please the court Bill Sherr for the Federal Communications Commission Is the case moot? Your Honor The case may be moot It seems as though Intercom presently would only own 4 FM and 1 AM stations which would comply As I understand it, the issue before the court is whether the FCC correctly determined in 2002 when the application was before whether Intercom's ownership would comply with the local radio rule that was then in effect But his challenge was that you should have applied the 2002 rule, which would have limited them to 4 stations Correct, Your Honor Right, so even if we were to say hypothetically that the FCC got it wrong the 2002 rule should have applied it wouldn't change anything in this case, would it? No, Your Honor I think it best if the court were to overturn the FCC's decision and send it back to the FCC to determine whether Intercom's ownership would comply with the local radio ownership It would in fact comply with the number of stations they have I'm sorry, you're asking us to overturn the FCC decision and send it back? No, I'm agreeing with you that the case is moot Just to quickly address Judge Williams' question about KID The difference between this case and KID is that KID involved a security interest that violated FCC policy The court didn't call into question the FCC's long-standing practice of accommodating state court orders where consistent with federal policy What the court held was that where there's a violation of FCC policy the commission can't simply accommodate a state court order without reconciling the federal policy with the state court order and that was why it remanded Here there's no security interest in the underlying agreement and there's no... Mr. Kelly seems to argue that ipso facto, a court order creates a security interest which I have to say I didn't get I think by definition, Your Honor a security interest is an interest granted by a debtor to secure an obligation rather than an interest created by a court order If a court order created a security interest that would essentially overturn the FCC's ability to accommodate state court orders as it did in this case I think what he's saying, if I understand it, is that what the court did here was force him, as a matter of law somehow created some legal interest under California law that forced him to surrender this interest by filing a transfer motion with the FCC and that, if I'm understanding his argument correctly is somehow a creation of a legal interest in the license forced surrender of it that is equivalent to what happened in Kidd As I think Your Honor pointed out the state court order required that the parties to the state court action submit an application with the FCC seeking FCC approval for transfer of the license it didn't order the FCC to make any determination whatsoever What would have happened between the interaction between the state court judgment if the FCC for whatever reason had said not going to do it, not going to do the transfer would that have been perfectly, I'm just trying to figure out how I get that the FCC here applied its own public interest determination made its own decision but given that the holder was forced to file this voluntary transfer what would have happened? The state court order required specific performance of the underlying agreement but it was contingent on the FCC approving the transfer of the license Typically, as I said, the FCC tries to accommodate state court orders in situations like that and if there isn't a violation of federal policy that's a bar to that and if there isn't a problem with the qualifications of the S&E, the FCC will grant it If the FCC hadn't granted it, I suppose then the whole case would have been kicked back to the state court to make a determination about what to do with the agreement in light of the fact that Intercom couldn't hold the license But the court decision here was the state court decision here was simply that the specific performance required was the filing of the application not the creation of an independent state law interest in the license Right, the state court ordered that the agreement was to transfer the station including the license and the state court recognized that transfer of the license required FCC authority and they therefore required as part of the specific performance that an application for FCC authority be submitted There was no reversionary interest in this case, right? No, your honor. Whereas in KID there was That's correct, your honor. I mean, it seems to me that's the striking difference because otherwise KID becomes a rather bizarre rule As I said, the KID didn't call into question the FCC's long-standing practice, which is firmly grounded in Supreme Court precedent of accommodating state court orders where consistent with the state court order wasn't consistent with federal policy because of this underlying reversionary interest which violated a specific FCC rule and general FCC policy and the FCC hadn't adequately explained in KID how it reconciled those interests. That's not the case here There was no security interest whatsoever On the grandfather clause I need some help understanding where this definition of pending came from if we were to have to reach the question Let me ask you first a question. Has the FCC ever applied the definition of pending that it has that you are claiming this order does in any other situation? The FCC The FCC in the golden triangle The local radio decision that we cite in our brief did conclude that the modified local radio ownership rule did not apply to a previously granted application that remained subject to review That was a very different case That case did not involve parsing the word pending It involved commission action itself. The commission itself had acted As I read this grandfather provision it says we'll address issues at the time we act, i.e. the commission acts on such applications The grandfather clause itself in section 498 says applicability turns on when the commission acts In this case the commission hadn't yet acted I think, Your Honor, when the commission uses the we in those application processing guidelines that you're I think referring to it's not making a distinction between the staff acting and the full commission on bonk acting If it was only referring to the full commission on bonk typically applications aren't processed by the commission They only reach the full commission if the staff grants or denies an application and then there's an application for review that brings it up to the full commission but application processing happens at the staff level and I think the commission generally will use we to refer to its own actions or its staff actions and then it will distinguish between those two when there needs to be a difference when, for instance, the full commission is deciding an application for review and is disagreeing or departing from a decision reached by its staff In answer to your question I can't cite to you a specific commission precedent where the commission interpreted pending in the specific way that it did here and has not yet acted on The commission in the peninsula communications case which is cited in the record I think it's a JA 222 rejected the argument that the definition of pending in rule 1.65 which is a different definition applied universally Just to clarify my concern here and that is the position which is not remotely clear from the text of this grandfather provision and that just seems to point the other way is that something is non-final but not pending even though it's still de facto pending before the FCC and I get that you want to say you can define it any way you want but if you're defining something in such an unusual way and that's why I asked if you ever used this definition before if not, if you're departing from precedent Golden Triangle don't help you then someone needs to be a little bit more clear to folks about what's going on Your Honor, it's true that the commission didn't define the word pending in that paragraph First of all, the commission's interpretation is entitled to deference unless it's plainly wrong or internally inconsistent I think when you look in the context of the whole with our argument here in particular, the grandfathering decision 14 paragraphs earlier makes clear that the commission didn't intend by modifying the ownership rules to require divestitures of existing combinations of stations Now it doesn't use the word pending there but when it talks about processing applications later a broader interpretation of the term pending in paragraph 498 where the processing guidelines are would be inconsistent with the purpose of the grandfathering decision Unless one thinks that divestiture that divestiture interest that should be protected is once there's been final agency action on It's hard to have a lot of interest in something that's non-final and still subject to invalidation by the FCC Well, the commission didn't distinguish between final and non-final authorizations in the grandfathering The concerns the commission expressed about requiring divestitures are concerns that would apply I think even to combinations that included stations with non-final authorizations It's disruptive to have to divest a station whether or not the authorization is non-final I think that it also disrupts expectations The commission was concerned about it being unfair to require parties to divest stations that they'd acquired under the existing rules that complied with the existing rules Even if parties understand that there's a risk of closing a transaction that it'll be overturned on review based on a different outcome We don't have to go to any of this if it's all moot Yeah, I'm not understanding Why isn't your argument on behalf of the government They've conceded it's moot. Mootness is jurisdictional Unless you have any questions, I'm going to sit down I'm not getting this It's my fault He answered your questions long after I thought he would have said there is no case, it's jurisdictional It's not a rightness or there's no prudential. If the case is gone, it's gone Your Honor, and with that I'm going to sit down I'm not going to let you One quick thing Is there any reason we need to have the FCC itself determine that there's only four licenses or if everyone's in agreement Is there any factual dispute about that they only hold four licenses because licenses can come and go They've conceded it. You're not disputing it, are you? We're not disputing it. Why don't you say there's no dispute There appears to be no dispute Thank you Your Honor, may it please you I'd like to take one more shot at what happened in the KTHO matter Why? The mootness has to do with KDND in Sacramento The commission formally deleted their facilities on Friday the 8th The KTHO is in South Lake Tahoe, California This is the Chris Kidd case. This is Kidd v. FCC What happened there was when you file an application on a Form 314 Your position is that even if the 2002 order doesn't apply if we were to somehow hold it doesn't apply then you still win on your Kidd argument Yes As an officer of the court I have to concede that the commission deleted the KDND Sacramento license on last Friday the 8th of September But the argument relative to Kidd v. FCC goes on I guess it was probably in the late 90s when Kidd purchased KTHO from Paradise Broadcasting If there was owner financing documents What is a relief? If there is nothing in this case in your mind other than Kidd, what is the redress that you would get? With the KDND deletion I have to admit that that argument is gone Then it's irrelevant You have to have some redress I don't understand even if your Kidd argument even if we agreed with you, what's the redress for you? That you would order the commission to dismiss the FCC form application that was filed on November 20, 2002 which was filed without my client's participation and authorization His signature was put on the form by someone else That application would be dismissed and we would end up like the Kidd case where the underlying applications were dismissed and my client would get the license back So we wouldn't get to the question of what law to apply because there shouldn't have been a transfer application process Because the whole application should have been dismissed in the first place Because for the same principles as Kidd it violated the reversionary interest I wanted to make the point that the judgment in the Sacramento served as a reversionary interest It's a security interest just as if you went down and recorded the lien Thank you for listening
judges: Millett, Edwards, Williams